**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JERRY PEREZ,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.,

Defendant.

Civ. No. 9:08-CV-1031 (LEK/RFT) (Lead case)

---

JOSE FERNANDEZ,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain*,

Defendants.

Civ. No. 9:08-CV-1050 (LEK/RFT) (Member Case)

---

STEVEN MORALES,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain, Eastern Corr. Facility*,

Defendants.

Civ. No. 9:08-CV-1059 (LEK/RFT) (Member Case)

---

ALCENIO SEGURA,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain, Eastern Corr. Facility*,

Defendants.

Civ. No. 9:08-CV-1117 (LEK/RFT) (Member Case)

---

CARLOS DE LA ROSA,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Security Captain, Eastern Corr. Facility*,

Defendants.

Civ. No. 9:08-CV-1181 (LEK/RFT) (Member Case)

---

MICHAEL MAISONET,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain*,

Defendants.

Civ. No. 9:08-CV-1192 (LEK/RFT) (Member Case)

---

LUIS JAVIER,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain*,

Defendants.

Civ. No. 9:08-CV-1266 (LEK/RFT) (Member Case)

---

DAVID BENAVIDES,

Plaintiff,

- v -

NEW YORK STATE DEP'T OF CORR. SERVS.; CAPTAIN LEGHORN; WILLIAM D. BROWN, *Superintendent, Eastern Corr. Facility*; MILSAP, *Corr. Officer*,

Defendants.

Civ. No. 9:08-CV-1268 (LEK/RFT) (Member Case)

---

LOUIS BATTISTINI,

Plaintiff,

- v -

Civ. No. 9:08-CV-1316 (LEK/RFT) (Member Case)

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain, Eastern Corr. Facility*; WILLIAM D. BROWN, *Superintendent, Eastern Corr. Facility*; MILSAP, *Officer, Eastern Corr. Facility*,

Defendants.

MICHAEL A. BERNARD,

Plaintiff,

- v -

Civ. No. 9:09-CV-0015 (LEK/RFT) (Member Case)

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN; WILLIAM D. BROWN, *Superintendent, Eastern Corr. Facility*; MILSAP, *Corr. Officer*,

Defendants.

EDWIN TAVERAS,

Plaintiff,

- v -

Civ. No. 9:09-CV-0096 (LEK/RFT) (Member Case)

NEW YORK STATE DEP'T OF CORR. SERVS.; MICHAEL LEGHORN, *Captain, Eastern Corr. Facility*,

Defendants.

GABRIEL ALCANTARA,

Plaintiff,

- v -

Civ. No. 9:09-CV-0217 (LEK/RFT) (Member Case)

NEW YORK STATE DEP'T OF CORR. SERVS.; LEGHORN, *Captain*, WILLIAM D. BROWN,

Defendants.

KEVIN GENTLE,

Plaintiff,

- v -

Civ. No. 9:09-CV-0317 (LEK/RFT) (Member Case)

NEW YORK STATE DEP'T OF CORR. SERVS.; CAPTAIN MICHAEL LEGHORN, *Eastern Corr. Facility*,

Defendants.

**APPEARANCES:** **OF COUNSEL:**

JERRY PEREZ
91-A-0372
Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

JOSE FERNANDEZ
05-A-6100
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

STEVEN MORALES
93-A-5606
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

ALCENIO SEGURA
04-A-0736
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

CARLOS DE LA ROSA
94-A-2674
Consolidated Plaintiff, *Pro Se*

Eastern Correctional Facility
Box 338
Napanoch, New York 12458

MICHAEL MAISONET
04-A-5047
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

LUIS JAVIER
02-A-4471
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

DAVID BENAVIDES
03-A-6112
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

LOUIS BATTISTINI
02-B-0740
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

MICHAEL A. BERNARD
92-A-0882
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

EDWIN TAVERAS
03-B-3010
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338

Napanoch, New York 12458

GABRIEL ALCANTARA
05-A-565
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

KEVIN GENTLE
97-A-7385
Consolidated Plaintiff, *Pro Se*
Eastern Correctional Facility
Box 338
Napanoch, New York 12458

HON. ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants and Consolidated Defendants
The Capitol
Albany, New York 12224

DOUGLAS J. GOGLIA, ESQ.
Assistant Attorney General

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

The *pro se* Plaintiffs listed in the above captions each brought separate civil rights Complaints, pursuant to 42 U.S.C. § 1983, alleging their constitutional rights were violated. On October 9, 2008, after reviewing some of the earlier received Complaints, we realized that the form and substance of the these Complaints were nearly identical and directed that the cases be consolidated, with *Perez v. New York State Dep't of Corr. Servs.*, Civ. No. 9:08-CV-1031 (LEK/RFT), as the designated Lead Case. Dkt. No. 4. Upon the subsequent filing of related Complaints, we further directed consolidation therewith, Dkt. Nos. 5, 18, 43, & 56.[1]

---

[1] We further directed the Clerk of the Court to file each Consolidated Complaint in the Lead Case, *Perez v. New York State Dep't of Correctional Servs.*, Civ. No. 9:08-CV-1031 (LEK/RFT). *See, e.g.*, Text Order, dated Feb. 5, 2009.
(continued...)

Pending before the Court is Defendants' Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] for failure to state a claim for relief. Dkt. No. 48; *see also* Dkt. No. 73, Defs.' Lt.-Mot. (asking that the pending motion to dismiss be applicable to each Consolidated Plaintiff).[3] Each Plaintiff separately opposes the Motion. Dkt. Nos. 55, 60-70, & 77-78.[4] For the

[1](...continued)
The respective Complaints and Response in Opposition to Defendants' Motion are included in the Lead Case Docket as follows:

| CLAIMANT | COMPLAINT | OPPOSITION |
|---|---|---|
| Jerry Perez, 91-A-0372 (Lead) | Dkt. No. 1 | Dkt. Nos. 60 & 64 |
| Jose Fernandez, 05-A-6100 (Member) | Dkt. No. 30 | Dkt. No. 63 |
| Steven Morales, 93-A-5606 (Member) | Dkt. No. 31 | Dkt. No. 62 |
| Alcenio Segura, 04-A-0736 (Member) | Dkt. No. 33 | Dkt. No. 68 |
| Carlos De La Rosa, 94-A-2674 (Member) | Dkt. No. 34 | Dkt. No. 61 |
| Michael Maisonet, 04-A-5047 (Member) | Dkt. No. 32 | Dkt. No. 55 |
| Luis Javier, 02-A-4471 (Member) | Dkt. No. 36 | Dkt. No. 65 |
| David Benavides, 03-A-6112 (Member) | Dkt. No. 35 | Dkt. No. 67 |
| Louis Battistini, 02-B-0740 (Member) | Dkt. No. 57 | Dkt. No. 78 |
| Michael A. Bernard, 92-A-0882 (Member) | Dkt. No. 39 | Dkt. No. 66 |
| Edwin Taveras, 03-B-3010 (Member) | Dkt. No. 45 | Dkt. No. 70 |
| Garbriel Alcantara, 05-A-565 (Member) | Dkt. No. 72 | Dkt. No. 69 |
| Kevin Gentle, 97-A-7385 (Member) | Dkt. No. 58 | Dkt. No. 77 |

[2] The crux of Defendants' request for dismissal stems from their belief that the Plaintiffs fail to state a claim for relief, and, even if they have so stated, Defendants are nevertheless entitled to qualified immunity. Dkt. No. 48. Defendants also seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based upon the terms of a Consent Decree issued in the Southern District of New York. We briefly address this latter basis for dismissal later in the Opinion. *See infra* Part II.B.

Also pending is Defendants' Letter-Motion requesting reconsideration of the Court's Order regarding the Plaintiffs' joint responsibility for payment of a single filing fee. Dkt. No. 92. That Motion shall be addressed in a separate order.

[3] The Motion was originally brought only on behalf of Defendants New York State Department of Correctional Services (DOCS), William D. Brown, and R. Milsap. *See* Dkt. No. 48, Notice of Mot.; Dkt. No. 48-1 Defs.' Mem. of (continued...)

reasons that follow, the Court recommends that Defendants' Motion be **granted** and all the Complaints be **dismissed**.

## I. BACKGROUND

In accordance with the standard of review for a motion to dismiss, the following facts are derived from the collective Complaints.[5] Plaintiffs are inmates in the custody of New York State

[3](...continued)
Law, at p. 1 n. 2 (noting that Defendant Captain Michael Leghorn had not been served with process). Subsequently, the Attorney General appeared on behalf of Defendant Leghorn and asked that Defendant Leghorn be permitted to join the request for dismissal, which was duly granted by the Court. Dkt. Nos. 49 & 50; Text Order, dated Mar. 23, 2009.

[4] Three templates of oppositional Memoranda of Law are presented to the Court, and each Plaintiff has replicated one of the three templates while simply substituting his own name. The first template was presented by Consolidated Plaintiff Maisonet (Dkt. No. 55) and is replicated by Consolidated Plaintiff Gentle (Dkt. No. 77). The second template was presented by Lead Plaintiff Perez (Dkt. Nos. 60 & 64) and is replicated by Consolidated Plaintiffs De La Rosa (Dkt. No. 61), Morales (Dkt. No. 62, without Exs.), Fernandez (Dkt. No. 63), Javier (Dkt. No. 65, with additional Ex.), Segura (Dkt. No. 68), and Taveras (Dkt. No. 70, without Exs.). Lastly, Consolidated Plaintiff Bernard offered a third template (Dkt. No. 66), which is replicated by Consolidated Plaintiffs Benavides (Dkt. No. 67), Alcantara (Dkt. No. 69) and Battistini (Dkt. No. 78).

[5] Each Complaint centers around the same strip frisk incident that occurred at Eastern Correctional Facility on June 14, 2008. The core facts and constitutional claims within each Complaint are virtually identical. However, there are instances where certain Plaintiffs provided additional facts and/or sued additional Defendants. In reciting the presumptively true facts, the Court will cite to the Complaint filed by Lead Plaintiff Jerry Perez. Where, however, additional facts are provided by a Consolidated Plaintiff, the Court will cite to that respective Complaint. We note that we read each *pro se* complaint liberally and interpret it to "raise the strongest arguments [each] *suggest[s]*." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations and quotation marks omitted) (emphasis in original); *see also Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (citing *Triestman* for the proposition that "[i]f a *pro se* litigant pleads facts that would entitle him to relief, that [action] should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks."). In this regard, given that each Plaintiff complains of the same incident, perpetrated by the same Defendants, and because their respective Complaints vary in only negligible ways and with regard to infinitesimal details, we read each Complaint to raise the same facts and claims against the same Defendants.

Finally, we note that, in an effort to make the factual recitation more complete, we will refer to documents submitted by the parties in support of their respective stances on the current Motion. Each of the extra-pleading documents were specifically referenced in the Complaint and were clearly within the Plaintiffs' possession in bringing these actions. The documents to which we speak are Grievances filed at Eastern Correctional Facility with regard to the strip frisk incident and the investigation and outcome of such Grievances, as well as DOCS Directive 4910, and a consent decree issued in *Hurley v. Coughlin*, 77 Civ. 3847 (RLC) (S.D.N.Y. 1983) (referenced in *Hurley v. Coughlin*, 158 F.R.D. 22 (S.D.N.Y. 1993). *See Paulemon v. Tobin*, 30 F.3d 307, 308-09 (2d Cir. 1994) (noting that a complaint includes any written instrument attached to it as an exhibit and any statement or document incorporated into it by reference); *Mills v. Garvin*, 2001 WL 286784, at *3 (S.D.N.Y. Mar. 2, 2001) (citing *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991), for the proposition that in ruling on a motion to dismiss, a court "may also consider documents annexed to the movant's papers which, although not annexed to the complaint, plaintiff either had in [his] possession or had knowledge of and upon which [h]e relied in bringing this suit").

Department of Correctional Services (DOCS), and, at all times relevant to the Complaints and continuing until the present, have been housed at Eastern Correctional Facility, a maximum security prison. On June 14, 2008, all Plaintiffs attended the Saint Jude's Catholic Family Day event at Eastern. Dkt. No. 1, Perez Compl., at ¶ 6. Because the event constituted a "contact visit," each Plaintiff was subjected to a strip frisk at the conclusion of the event; the strip frisks were conducted by Defendant Correction Officer Milsap, as directed by Defendant Captain Michael Leghorn. *Id.*; Dkt. No. 35, Benavides Compl., at Part IV. According to DOCS Directive 4910(IV)(B) & (IV)(I)(1), all inmates in maximum security facilities shall be strip frisked following contact visits, which is defined as a meeting between an inmate and, *inter alia*, "his family, friends, legal counsel, and any other authorized persons in an area designated for this purpose." Dkt. No. 48-3, Douglas J. Goglia, Esq., Decl., dated Mar. 6, 2009, Ex. A at pp. 10-11. According to this same Directive, a strip frisk is performed when specifically authorized by the Directive, or upon a finding of probable cause, and is defined as follows:

> A strip frisk means a search of an inmate's clothes and body including a visual inspection of body cavities. For a male this involves one or more of the following procedures: a mouth search . . ., running his hands through his hair, allowing his ears to be visually examined, lifting his arms to expose his armpits, lifting his testicles to expose the area behind his testicles, and bending over and spreading his buttocks to expose his anus to the frisking officer.

*Id.*, DOCS Directive 4910(III)(E)(1).

When it came time for inspection of the Plaintiffs' buttocks, Defendant Milsap, claiming to be under orders from Defendant Captain Leghorn, utilized a flashlight/floodlight[6] to examine each of the Plaintiff's anuses, for approximately thirty seconds each. Perez Compl. at ¶ 6; Dkt. No. 35, Benavides Compl. at p. 4.

---

[6] The terms "flashlight" and "floodlight" are used interchangeably throughout the various Complaints. Given the within analysis, the distinction is irrelevant.

Days later, Grievances were submitted (and consolidated) to the Inmate Grievance Review Committee (IGRC). Perez Compl. at ¶ 7. Thereafter, Defendant Superintendent William D. Brown and Deputy Superintendent for Security T. Griffin[7] held a meeting with approximately twenty-six inmates and advised them that the use of the flashlight/floodlight during the strip search was inappropriate and would not happen again. *Id*. at ¶ 8. On July 9, 2008, Superintendent Brown entered a decision on the Consolidated Inmate Grievance, noting that, after conducting a proper investigation, it was determined that the strip frisk was properly conducted in accordance with DOCS Directive 4910, but the use of a flashlight was inappropriate and corrective action had been taken.[8] *Id*. at ¶ 9. That resolution was appealed to the Cental Office Review Committee (CORC), who accepted the Consolidated Grievance in part, upholding the Superintendent's determination and noting that the matter had been properly investigated. *Id*. at ¶ 10. The CORC also determined that it had not been presented with sufficient evidence to substantiate any malfeasance by the employees referenced in the Grievance. *Id*.

All Plaintiffs concede, in their respective Complaints and Opposition papers, that because they participated in a contact visit, it was proper for a strip frisk to be conducted pursuant to DOCS Directive 4910. Similarly, all Plaintiffs admit that during the entire strip search, they were not physically touched nor harmed. However, Plaintiffs collectively contend that the use of the flashlight/floodlight was prohibited by this Directive and that the use of such device was degrading and humiliating. Plaintiffs assert that because of this incident, they have been deterred from participating in and/or attending Catholic Services at Eastern. Perez Compl. at ¶ 12. Other inmates

[7] T. Griffin is not a named Defendant in any Complaint.

[8] It is alleged that, following this strip frisk incident, "Captain Leghorn was suspended pending an investigation and was ultimately forced to retire/resign from the department." Dkt. No. 32, Maisonet Compl. at p. 4.



R F T

further allege they suffer from mental pain, anguish, paranoia, and sleeplessness as a result of the incident (*i.e.*, Benavides Compl. at p. 5), while still others profess to be victims of staff mocking and taunting in the days following the incident (*i.e.*, Dkt. No. 36, Javier Compl., at ¶ 8). Plaintiffs claim that the use of the flashlight/floodlight during the otherwise valid strip frisk violated their First, Fourth, Eighth, and Fourteenth Amendment rights and that the search amounted to various state torts, including negligence, "intentional infliction of emotional pain and suffering," and loss of consortium. Perez Compl. at Preliminary Statement.

**II. DISCUSSION**

**A. Standard of Review**

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949

F.2d 42, 47 (2d Cir. 1991) (emphasis added).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1960 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __ 129 S.Ct. at 1949. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, __ U.S.

__ 129 S.Ct. at 1950-51.

With this standard in tow, we consider the plausibility of Plaintiffs' Complaints.

**B. DOCS Directives and the *Hurley* Consent Decree**

Plaintiffs assert that the use of a flashlight/floodlight during the strip frisk violated DOCS Directive 4910. As a preliminary matter, we note that even if we were to find that DOCS Directive 4910 was violated, that doesn't necessarily translate into a § 1983 violation. Indeed, it is clear that a violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983. *Doe v. Conn. Dep't of Child and Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990); *Farid v. Demars*, 2009 WL 455450, at *6 n.6 (N.D.N.Y. Feb. 23, 2009). Thus, to the extent Plaintiffs rely primarily on the purported violation of DOCS Directive 4910 as support for their § 1983 actions, such claims must fail.

Next, Plaintiffs assert that the use of a flashlight/floodlight during the strip frisk violated the terms of the *Hurley* Consent Decree that governs strip frisks of inmates in DOCS custody. The *Hurley* Consent Decree was entered into on July 21, 1983 in the case of *Hurley v. Coughlin*, 77-CV-3847 (RLC) (S.D.N.Y. 1983), a class action suit brought on behalf of all inmates in DOCS custody who were seeking to enjoin certain strip frisk and strip search policies of the Department. The decree sets forth the specific procedures that prison officials must follow during a strip frisk or strip search of any prisoner or group of prisoners. Dkt. No. 48-4, Goglia Decl., Ex. B. Subsequently, DOCS Directive 4910 was enacted, incorporating the terms of the *Hurley* Consent Decree, and, on June 19, 2001, the decree was dissolved by court-approved stipulation. Dkt. No. 48-5, Goglia Decl., Ex. C. Both the Consent Decree and DOCS Directive 4910 mandate that strip frisks be conducted after a contact visit, and neither document specifically precludes visual assistance in the form of a

flashlight or floodlight. Most pointedly, at the time Plaintiffs were strip frisked, the Consent Decree was no longer in effect. Therefore, any claim that the Consent Decree was somehow violated must fail.[9]

**C. First Amendment**

Plaintiffs assert that because they were humiliated and demoralized by the use of the flashlight/floodlight during the strip frisk, they have been deterred from attending any other religious function. No Plaintiff has identified a specific event they declined to attend as a result of their strip frisk experiences. They merely recite, in conclusory fashion, that they have been deterred from "participating and/or attending Catholic services." Perez Compl. at ¶ 12.

While prisoners maintain some measure of constitutional protection afforded by the Free Exercise Clause of the First Amendment, *Pell v. Procunier*, 417 U.S. 817, 822 (1974), such rights are balanced against the "interests of prison officials charged with complex duties arising from administration of the penal system," *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). Free exercise claims of prisoners are therefore "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)); *see also Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). In free exercise cases, the inmate "need only demonstrate that the beliefs professed are 'sincerely held' and in the individual's

[9] In addition to alerting the Court to the dissolution of the Consent Decree, Defendants assert, in the alternative, that if the Consent Decree is in full force and effect, this Court lacks subject matter jurisdiction, as jurisdiction over the Consent Decree is held solely in the Southern District of New York. If the Consent Decree were still in force, we would agree with Defendants' assessment. *See* Dkt. No. 48-4, Goglia Decl., Ex. B, *Hurley* Consent Decree, dated July 21, 1983 (ordering that the Southern District Court "shall retain jurisdiction to enforce the terms of th[e] decree"); *Jermosen v. Coughlin*, 1992 WL 116319 (S.D.N.Y. May 19, 1992) (noting that venue is proper in the Southern District because of the *Hurley* Consent Decree). Given the status of the Consent Decree, we need not recommend a change of venue for this action.

'own scheme of things, religious.'" *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) (quoted in *Ford v. McGinnis*, 352 F.3d at 588); *see also United States v. Seeger*, 380 U.S. 163, 185 (1965). The inmate must also show that such religious beliefs were infringed upon by prison officials. *Farid v. Smith*, 850 F.2d at 926.

While we may, for the moment, recognize that all Plaintiffs demonstrate sincerely held beliefs in practicing Catholicism, we do not find that they have shown any burden placed upon their free exercise of those beliefs. In the first instance, whatever fear they may have internalized from the strip frisk is entirely separate from their willingness to attend Catholic Services. Indeed, the only connection between the Catholic Family Day event and regular Catholic Services is the common denominator of religion. But, as all Plaintiffs readily admit, the strip frisk conducted on June 14th was not motivated by religious reasons, but instead because the Plaintiffs participated in a contact visit. All Plaintiffs agree that the strip frisk was conducted by virtue of DOCS Directive 4910, and that it was appropriate following their contact visit to succumb to a strip frisk. The fact that they disapprove of the manner in which the strip frisk occurred has little connection to their ability to freely practice their religion. In this vein, Plaintiffs' claims that they have been deterred from participating in any and all religious events, regardless of whether such events would be followed by a strip frisk, is far too attenuated and should be **dismissed**.

### D. Fourth Amendment

The Fourth Amendment, applicable to the States by way of the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. While this fundamental protection is not completely lost by prisoners merely as a consequence of their incarceration, prisoners

nevertheless do not enjoy the same privacy rights as non-prisoners since "[l]oss of . . . privacy [is an] inherent incident[ ] of confinement[.]" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). In addition, prison administrators are accorded a high level of deference when dealing with threats to institutional security and internal order. *Id*. at 546-48. In the context of body searches, or strip frisks, such privacy infringements have been upheld as constitutional, even if conducted without probable cause, as long as the search is reasonable and not abusive. *Id*. at 558-60; *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992); *Duamutef v. Leonardo*, 1993 WL 428509, at *2 (N.D.N.Y. Oct. 22, 1993) (noting that a prisoner's "Fourth Amendment privacy rights must often yield to the governmental interest in preventing contraband from entering the prisons"). As the Supreme Court noted in *Bell*,

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. at 559 (citations omitted).

In applying this balancing test, the *Bell* Court found that routine visual body cavity searches conducted after every contact visit with a person from outside the institution are not *per se* unreasonable as long as the searches are conducted in a reasonable manner. *See, e.g.*, *Miller v. Bailey*, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (citing *Bell v. Wolfish*, 441 U.S. at 559, and *Covino v. Patrissi*, 967 F.2d at 79), for the proposition that strip searches "have been upheld as a reasonable security measure within a correctional facility even in the absence of probable cause as long as they are related to a legitimate penological goal"). As noted above, DOCS Directive 4910 was promulgated to address the various scenarios wherein a strip frisk may be conducted and certain procedural guidelines that must be followed when conducting a search of that nature. And, the strip

frisk at issue was specifically authorized by Directive 4910.

The Plaintiffs don't outright question the reasonableness of the need for the strip frisk after their contact visits. Indeed, they embrace the notion that a search conducted precisely in line with DOCS Directive 4910 is presumptively reasonable and valid, and they readily admit that the contact visit at issue is specifically identified under Directive 4910 as one such occasion when a strip frisk is authorized. At issue for the Plaintiffs is whether the use of the flashlight/floodlight during the viewing of their anuses catapulted the manner of the search into the unreasonable realm. Construing their claims liberally, Plaintiffs deduce that because DOCS Directive 4910 does not specifically call for the use of a flashlight/floodlight during the search, its use is prohibited and therefore the search became presumptively invalid. We do not agree. While it is true that DOCS Directive 4910 does not specifically authorize the use of a visual enhancement, such as a light, the converse is also true in that nothing in DOCS Directive 4910 specifically prohibits the use of a flashlight/floodlight during a strip frisk. Furthermore, though the Superintendent, in adjudicating the Consolidated Inmate Grievance, found the use of a light to be "inappropriate," that doesn't necessarily equate to a violation of that Directive. And even if it were deemed to be a violation of Directive 4910, that does not render its use unreasonable for Fourth Amendment purposes. *See Leverette v. Bell*, 247 F.3d 160, 169 (4th Cir. 2001) ("That the search deviated from [the Department of Corrections's] formal policies and procedures does not render it unreasonable under the Fourth Amendment."); *see also Eng v. Therrien*, 2008 WL 141794, at *8 (N.D.N.Y. Jan. 11, 2008) (citing cases for the proposition that a prisoner's allegation that a pat frisk violated DOCS Directive 4910 would not "in and of itself, constitute a violation of the Fourth Amendment"). Our inquiry must focus not on whether the search conformed to state law, but whether, under federal constitutional jurisprudence,

the search was reasonable. In this regard, we are not swayed, as a matter of law, that the use of the light rendered the entire search unreasonable. In focusing on the reasonableness of the entire search, we find that the minimal intrusion upon the prisoners' dignity is far outweighed by the correctional facility's compelling need for maintaining security. *Bell v. Wolfish*, 441 U.S. 559; *Covino v. Patrissi*, 967 F.2d at 77. The strip frisk was clearly authorized by DOCS Directive 4910, which was drafted with an aim toward maintaining institutional security and eliminating contraband. Dkt. No. 48-3, Goglia Decl., Ex. A at p. 3. Regardless of the basis for using the light, *i.e.*, for better illumination or to harass the inmates, we find that, in its totality, the strip frisks conducted by Defendant Milsap as directed by Defendant Leghorn were not unreasonable and therefore not a violation of the Fourth Amendment. *See Troy v. Kuhlmann*, 1999 WL 825622, at *9 (S.D.N.Y. Oct. 15, 1999) (noting that a strip frisk conducted after a contact visit which was limited to a visual body-cavity search and did not involve any touching was reasonable under the Fourth Amendment).[10] As for the other Defendants, who had no direct involvement in the strip search but merely acted on an Inmate Grievance, to the extent Plaintiffs intended to hold such Defendants liable by virtue of supervisory liability, we similarly find no liability given the lack of constitutional violation. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In any event, all Defendants would be entitled to qualified immunity on this issue, since it is not clearly established that the use of a flashlight/floodlight during an otherwise authorized strip search is a violation of a prisoner's limited Fourth Amendment right. *See infra* Part II.G. As such, we recommend **dismissal** of Plaintiffs' Fourth Amendment claims.

[10] As evinced by our discussion above, we need not engage in a reconciliation between the Superintendent's opinion that the use of the flashlight was inappropriate and clearly established constitutional precedents.

**E. Eighth Amendment**

Plaintiffs claim that the strip frisks violated their Eighth Amendment right to be free from cruel and unusual punishment. We note that Plaintiffs do not proffer the typical Eighth Amendment claim resulting from either the use of physical/excessive force or from being denied basic human needs, such as food, medical care, or safety. Instead, Plaintiffs assert that the use of the flashlight/floodlight during the strip frisk was degrading, demoralizing, and humiliating, thereby resulting in a violation of their right to be free from cruel and inhuman treatment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment and is applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666-67 (1962) (cited in *Tramell v. Keane, et al.*, 338 F.3d 155, 161 (2d Cir. 2003)). To prove a violation of the Eighth Amendment, an inmate must show, "(1) that the deprivation alleged is 'objectively sufficiently serious' such that the plaintiff was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'" *Trammell v. Keane*, 338 F.3d at 161 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Generally, strip frisks are not deemed to be sufficiently serious enough to constitute a violation of the Eighth Amendment, even in cases where the frisk is accompanied by inappropriate sexual contact. *Murray v. Bushey*, 2009 WL 498144, at *6 (N.D.N.Y. Feb. 26, 2009) (citing cases wherein reprehensible sexual touching accompanied the strip frisk and still no Eighth Amendment violation was found); *Duamutef v. Leonardo*, 1993 WL 428509, at *13 (N.D.N.Y. Oct. 22, 1993) (finding that the prisoner's claim that the strip frisks caused him to "suffer constant humiliation, unnecessary psychological pain and distress"did not rise to an Eighth Amendment violation). In the



R F T

Court's review of this area of the law, we uncovered few cases where, factually, a light was used during a strip frisk and served as the basis for a constitutional violation. In *Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005), the court found that the use of a light during a strip frisk, wherein the officer also touched the area in between the inmate's buttocks with his middle finger, causing the inmate to urinate on himself, and rubbed his penis against the inmate's buttocks, was insufficient to state an Eighth Amendment claim. In our case, the only allegation of wrongdoing is the use of the light during the strip frisk. There is no allegation that physical touching occurred during any strip frisk, and the light was shone on the prisoners' buttocks for a mere thirty seconds. Whereas, in *Morrison*, the officer was alleged to have utilized a light and sexually abused the inmate, and still no Eighth Amendment violation was found. "There is no question that strip searches may be unpleasant, humiliating and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Miller v. Bailey*, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) (quoting *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003)). After reviewing a multitude of cases wherein sexual touching during a strip frisk was deemed to not be an Eighth Amendment violation, the Court is convinced that no such violation occurred during the strip frisk at issue in this case.[11] Accordingly, Plaintiffs' Eighth Amendment

---

[11] Amongst those cases reviewed by the Court are those listed in *Murray v. Bushey*, 2009 WL 498144, at *6 (N.D.N.Y. Feb. 26, 2009):

> *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (allegation that correctional officer touched inmate's penis during one strip search and pressed against him sexually on another occasion insufficient to state Eighth Amendment claim); *Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise to constitutional claim); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); *Williams v.*

(continued...)

claims should be **dismissed.**

**F. Due Process**

Plaintiffs mention, almost in passing, that the strip frisks violated their Fourteenth Amendment due process rights. It is not clear whether Plaintiffs assert a violation of their substantive or procedural due process rights. To the extent they claim a violation of their substantive due process rights, we refer to the above analysis which disavows any stated constitutional violation that would be subsumed into the Fourteenth Amendment's substantive due process clause. As for a procedural due process violation, Plaintiffs suggest that they were subjected to an illegal strip frisk without first being provided procedural protections. In support of this claim, and reading their papers liberally, Plaintiffs look to the wording of DOCS Directive 4910 and assert that its mandatory language gives rise to a liberty interest to be free from strip searches that fail to adhere to the specific contours of that Directive.

To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are typically derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*. We can readily disabuse Plaintiffs of the notion that prisoners derive a liberty interest to be free from DOCS authorized strip frisks from the Due Process Clause itself. Indeed, the Due Process Clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates if those changes are "within the normal limits or

[11](...continued)
*Keane*, No. 95 Civ. 0379, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmates genitals during pat frisk failed to state constitutional claim).

range of custody which the conviction has authorized the state to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995). Instead, the Due Process Clause protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner." *Id.* at 484 (quoted in *Arce v. Walker*, 139 F.3d at 333). Nothing about the manner in which the strip frisks were conducted in this case exceeded the Plaintiffs' sentences in an unexpected manner. DOCS Directive 4910 clearly spells out the scenarios wherein a strip frisk is authorized, and even mandated, and the use of light during such a frisk in no way implicates a liberty interest protected by the Due Process Clause.

Alternatively, state statutes and regulations may also confer liberty interests on prisoners. *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr.*, 490 U.S. at 460). Prior to the Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472 (1995), the struggle to define the contours of state created liberty interests rested with the district courts, who would engage in the arduous task of scrutinizing state statutes and administrative regulations to determine whether the state had "gone beyond issuing mere procedural guidelines and had used 'language of an unmistakenly mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Lee v. Coughlin*, 26 F. Supp. 2d 615, 629 (S.D.N.Y. 1998) (quoting *Hewitt v. Helms*, 459 U.S. at 471-72); *see also Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). Such methodology, according to the *Sandin* Court, produced two undesirable effects:

> First, it create[d] incentives for States to codify prison management procedures in the interest of uniform treatment. . . . Second, the *Hewitt* approach [] led to the involvement of federal courts in the day to day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.

*Sandin v. Connor*, 515 U.S. at 482.

Recognizing the fallacy of such methodology, the Supreme Court held that States may still create liberty interests for inmates, thereby requiring some process precede the deprivation of such interest,

however, such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id*. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d at 392.

Plaintiffs cannot state that they had any liberty interest in remaining free from these strip frisks, which are clearly imposed in an effort to maintain security in the prisons. *See* Dkt. No. 48-3, Goglia Decl., Ex. A, DOCS Directive 4910(II). The use of a light during an authorized search does not amount to an atypical and significant hardship. Therefore, as a matter of law, we find that Plaintiffs had no liberty interest in remaining free from these strip frisks and were not entitled to any procedural protections prior to the implementation of the searches. Accordingly, Plaintiffs Fourteenth Amendment claims should be **dismissed**.

**G. Qualified Immunity**

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). Until recently, courts faced with qualified immunity defenses have applied the procedure mandated in *Saucier v. Katz*, 533 U.S. 194 (2001). That case set forth a two-pronged approach whereby the court must first decide whether the facts alleged, or shown, make out a violation of a constitutional right. If yes, the court must then decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Recently, however, the Supreme Court softened the rigid approach enunciated in *Saucier*. *See Pearson v. Callahan*, __ U.S. __ 129 S.Ct. 808 (2009). Now,

the *Saucier* two-pronged test is not mandated in terms of the order in which the prongs may be addressed, though the sequence of review may remain appropriate or beneficial. *Id*. at 818.

Qualified immunity is an affirmative defense that must be pled by the official claiming it. *Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (citing *Harlow v. Fitzgerald*, 457 U.S. at 815). The only pleadings filed in the present case thus far are the Complaint and Consolidated Complaints. Defendants have not raised this affirmative defense in a responsive pleading, as set forth in Federal Rule of Civil Procedure 8(c), but rather in their Memorandum of Law in support of the Motion to Dismiss. Dkt. No. 48-1. Generally, however, "the defense of qualified immunity cannot support the grant of a . . . 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir. 1983); *see also McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green*). An exception to this general rule exists where the complaint itself sets up, on its face, the qualified immunity defense; in such an occasion, dismissal for failure to state a claim would be appropriate. *Roniger v. McCall*, 22 F. Supp. 2d 156, 162 (S.D.N.Y. 1998) (citing *Green v. Maraio*, 722 F.2d at 1019); *see also McKenna v. Wright*, 386 F.3d at 435.

We find that the Complaints in this matter indeed set forth, on their faces, the qualified immunity defense. The sole basis for the Plaintiffs' allegations of constitutional wrongdoing is the use of the flashlight/floodlight during the otherwise authorized strip frisks. To be clear, in light of the above analysis, we do not find that the Defendants violated the Plaintiffs' constitutional rights. However, in the event the District Court disagrees with our assessments, we recommend that Defendants be granted qualified immunity since it is not clearly established that the use of such visual aid during an otherwise lawful strip frisk is violative of a constitutional right. In this regard,

a reasonable officer would not believe that the use of a flashlight/floodlight during a strip frisk would violate the prisoners' rights.

**H. State Claims**

Plaintiffs allege state law claims for negligence, intentional infliction of emotional pain and suffering, and loss of consortium. Since we recommend the federal claims be **dismissed** from this action, we also recommend **dismissal** of the pendent state law claims pursuant to 28 U.S.C. § 1367, which authorizes a federal court to decline to exercise supplemental jurisdiction over a state claim if all of the claims over which the court had original jurisdiction were dismissed. 28 U.S.C. § 1367(c)(3).

**III. CONCLUSION**

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 48) be **GRANTED** and each of the Plaintiff's respective Complaints be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).



R F T

Date: March 16, 2010
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

R F T